Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Chapter 13 |
| **Jeffrey Pratt** and **Karie Pratt**, | Case No. 19-60593-dwh13 |
| Debtors. | MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF JNLL, LP |
| | NOT FOR PUBLICATION |

## I.     Introduction

At the August 12, 2020, hearing in this case, I heard argument on the objection by debtors, Jeffrey R. Pratt and Karie N. Pratt, to proof of claim 6-3 filed on behalf of JNLL LP.[1]

For the reasons that follow, I will sustain the objection in part and reduce the arrearage component of the claim from $26,534.08 by $1,870 to $24,664.08.

---

[1] Docket item (DI) 36.

Page 1 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

## II. Background

On May 17, 2019, the Pratts filed proof of claim 6-1 on behalf of JNLL. On May 20, 2019, they filed their preconfirmation amended proposed chapter 13 plan.[2]

On July 10, 2019, JNLL filed its objection to confirmation of the plan.[3] The specific objections were that—

- The plan's estimate of JNLL's arrearage claim is incorrect; it's actually $21,004.75, rather than $15,000;[4]
- The Marion County Tax Assessor had already been paid by JNLL, so it shouldn't be paid under the plan;[5]
- The plan is infeasible;[6]
- The plan does not provide for sale or refinance of its collateral;[7]
- The plan was not proposed in good faith;[8]
- The plan should provide for automatic conversion to chapter 7 and prohibit dismissal of the case;[9] and
- If the plan isn't confirmed, the court should immediately convert the case to chapter 7.[10]

---

[2] DI 16.
[3] DI 21.
[4] DI 21 at 3, ¶ 1.
[5] DI 21 at 3, ¶ 2.
[6] DI 21 at 3-4, ¶ 3.
[7] DI 21 at 4, ¶ 4.
[8] DI 21 at 4, ¶ 5.
[9] DI 21 at 4, ¶ 6.
[10] DI 21 at 4, ¶ 7.

Page 2 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

On August 15, 2019, JNLL amended claim 6-1, which became claim 6-2,[11] and on August 29, 2019, it amended claim 6-2, which became claim 6-3.[12] In claim 6-3, the number stated in part 9 as the amount necessary to cure any default as of the petition date is $26,534.08. An attachment lists the components of the claimed arrearage, including postpetition attorney fees incurred through August 21, 2019, of $3,850. The claim does not include any itemization of the postpetition attorney time entries.

On September 10, 2019, JNLL conditionally withdrew its confirmation objection,[13] and on October 10, 2020, the court entered an order confirming the plan.[14]

On June 8, 2020, the Pratts filed the claim objection. They assert that the $3,850 amount is excessive because JNLL's plan-confirmation objection was routine, and the issues were not novel, unique, or difficult. They request that the arrearage be reduced to $23,239.08, a reduction of $3,295.

In JNLL's response to the objection,[15] it makes four arguments.

- First, the issues involved in reviewing, researching, and drafting objections to plan confirmation, including researching whether the Pratts could cure their prepetition default after entry of judgment in the prepetition state-court foreclosure action, were difficult and time-consuming.

- Second, JNLL's lawyers researched plan feasibility and drafted an objection to the proposed payment of real-property taxes and interest.

---

[11] Claim 6-2.
[12] Claim 6-3.
[13] DIs 25, 26.
[14] DI 31.
[15] DI 39.

Page 3 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

- Third, JNLL's lawyers attempted to minimize their fees for determining whether the Pratts could cure only their prepetition default despite entry of the prepetition judgment by asking the Pratts' lawyer, Lars Olsen, "for any authority for his position that payment of the full accelerated balance was not required," to which Olsen didn't respond.
- Fourth, the lawyers then "consulted with two attorneys in Marion County who specialize in bankruptcy law" who "did not have a clear answer on this prepetition default issue. As such, Creditor's counsel performed its own research in this regard, which such research included an in-depth review of applicable case law on this point."

To a declaration filed by Elena Farley, one JNLL's lawyers, she attached attorney time records with time-entry itemizations.[16]

In the Pratts' memorandum supporting the claim objection, they requested that the attorney-fee portion of the claim be reduced from $3,850 to $1,555, a reduction of $2,295, rather than of $3,295, the reduction amount requested in the objection itself.[17] To support the requested reduction, the Pratts first challenge time entries on July 5, 8, and 9, 2019, totaling 9.2 hours for, according to the Pratts, "researching bankruptcy issues." Although the Pratts do not specify which time entries on those days are at issue, 9.2 hours is the sum of the entries on those dates for Elena Farley and Michael Martinis, but not Caeleigh Rogers. The days of those entries led up to the July 10, 2019, filing of JNLL's confirmation objection.

---

[16] DI 38, Ex. A.
[17] DI 44.

Page 4 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Second, the Pratts challenge a time entry on June 4, 2019, for 0.6 hours. That entry describes two services by Byron Farley: (1) a telephone conversation with Olsen regarding whether the Pratts could cure their delinquency rather than pay the entire judgment amount and (2) researching Oregon statutes and case law on the same subject. In the Pratts' memorandum, Olsen asserts that the phone call with Byron Farley lasted only 0.2 hours, and, in any case, it was not his or the Pratts' obligation to provide JNLL's lawyers with legal authority for the Pratts' plan, citing 11 U.S.C. § 1322(c)(1).

The amount billed for all the entries the Pratts challenge by date—those on June 4 and July 5, 8, and 9, 2019—is $2,370, not $2,295.

In addition to challenging those specific time entries, the Pratts' memorandum also disputes the necessity of JNLL's objection to the amount of the plan's estimate of JNLL's arrearage,[18] and it labels as excessive "[b]illing for .5 hours to call a bankruptcy expert and review a Chapter 13 plan."[19]

At the hearing, JNLL's lawyer described in essence the doctrine of merger—that a foreclosed promissory note merges into a judgment on the note—as the source of her uncertainty regarding a debtor's ability to cure by paying just the amount in arrears (determined without regard to entry of the judgment), rather than the entire judgment amount. She also agreed with the statement in the Pratts' memorandum that the June 4 phone call was only 0.2 hours in length, but she also pointed out that Byron Farley performed other services that day. Finally, she agreed that I could consider the Pratts' memorandum as evidence to the extent of Olsen's allegation regarding the length of the June 4 phone call.

---

[18] DI 44 at 3.
[19] DI 44 at 3.

Page 5 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

Olsen agreed that I could consider Elena Farley's declaration as evidence. Both lawyers declined to present additional evidence.

## III. Analysis

I will consider only the specific time entries that the Pratts have questioned: Byron Farley's on June 4 and Elena Farley's and Martinis's on July 5, 8, and 9. And because the Pratts' memorandum implicitly specifies the amount of their requested reduction as $2,295, I will consider only whether to reduce the fees by no more than that amount.

In the Pratts' memorandum, they cite section 506(b), which includes in a secured claim "reasonable fees . . . provided for under the agreement or State statute under which such claim arose."[20] The Pratts challenge the postpetition attorney fees only on the basis of reasonableness. They don't challenge JNLL's right, by contract or statute, to recover reasonable fees. And JNLL has not disputed that its right to recover attorney fees is limited to a reasonable amount.

The Pratts object to the entirety of the entries on the specified dates. Their general objection is that time spent opposing the plan was excessive in light of the circumstances. Their specific objection is their ability to cure the default is spelled out in section 1322(c)(1) and didn't warrant any material amount of research—at least at their expense.

### A. *Time spent on cure-right research*

#### 1. **Reasonableness of cure-right research**

JNLL concedes that its research on the Pratts' cure right found no basis to dispute it. But it contends that question nonetheless warranted research.

---

[20] DI 44 at 2.

Page 6 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

At argument, Elena Farley said that in her research she found the 1993 Ninth Circuit Bankruptcy Appellate Panel opinion in *In re Hurt*.[21] That case addressed the effect of section 1322(b)(5), which permits a plan to provide for curing of a default on any secured claim on which the last payment is due after the date on which the final payment under the plan is due. Section 1322(b)(5) does not specify when this right to cure terminates, including whether it terminates upon entry of a foreclosure judgment.

In 1994—after *Hurt*—Congress adopted current section 1322(c).[22] Section 1322(c)(1) permits a plan to provide for cure of a default under a residence lien "until such residence is sold at a foreclosure sale." JNLL does not contend that a foreclosure sale (as opposed to a judgment of foreclosure) preceded the Pratts' petition. JNLL did not cite any case law that has doubted the application of section 1322(c)(1) to a residence lien subject to a prepetition foreclosure judgment, but not to a sale.

If a home-lienor creditor's lawyer is unfamiliar with Bankruptcy Code provisions addressing the permissible elements of a chapter 13 plan, it is of course reasonable, and indeed necessary, that the lawyer become familiar with those provisions. But it does not follow that it is reasonable to charge for time spent becoming familiar with those provisions, which applies to every chapter 13 case commenced to prevent a foreclosure sale.

I thus find that the time JNLL's lawyers spent researching the effect of the prepetition foreclosure judgment on the Pratts' right to cure under their chapter 13 plan was not reasonable and may not be charged to the Pratts.

---

[21] 158 B.R. 154 (9th Cir. B.A.P. 1993).
[22] Bankruptcy Reform Act of 1994, Oct. 22, 1994, Pub. L. No. 103-394, § 301(2).

Page 7 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

### 2. Effect of disallowing time spent on cure-right research

The June 4 and July 8 entries are entirely cure-right-research time, which I will disallow.

### B. *Time spent other than on cure-right research*

I must determine the compensability of the time entries, other than the disallowed entries on June 4 and July 8, on the dates at issue: Elena Farley's July 5 entry for 1.5 hours, her July 9 entry for 3.5 hours, and Michael Martinis's July 9 entry for 2.2 hours. Her July 5 time, other than on cure-right research, was to "[r]eview bankruptcy filings; review judicial foreclosure pleadings." Her July 9 time in that category was to "research other grounds [other than challenging the Pratts' cure right] for objection to plan; draft objections to modified Chapter 13 Plan and identify exhibits." All of his July 9 time was to "[r]eview bankruptcy issues; assist in calculation arrearage for Objection to Amended Plan and Proof of Claim."

JNLL, as claimant, has the ultimate burden of proving its claim, including the reasonableness of its claimed attorney fees. The time entries at issue specified only the time spent during a day but not also the time spent on each task during the day. Thus, it is impossible for me to know the amount of time the lawyers spent on the activities other than cure-right research. I am left to judge the value of compensable services just as if JNLL had elicited testimony at trial that the time spent on compensable activities not separately accounted for on its billing statement was greater than zero and less than the total amount of the time spent—but otherwise of an unknown amount.

### 1. Time spent objecting to amount of plan's arrearage estimate

In addition to challenging the overall reasonableness of JNLL's $3,580 JNLL's attorney-fee claim, the Pratts specifically object in their memorandum to the reasonableness of JNLL's

Page 8 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

lawyers spending time objecting to the amount of the plan's estimate of JNLL's arrearage.[23] Martinis's July 9 entry includes his "assisting" in calculation of JNLL's arrearage. That entry doesn't state whom he assisted. But because Elena Farley also billed on that date, and her time descriptions are general, I infer that some of her time that day was also spent calculating the arrearage.

The Pratts correctly state that such an objection isn't necessary for a creditor to be entitled to payment of the correct arrearage amount if different than the plan's estimate. That's because paragraph 4(b) of the plan form, LBF 1300.17, says that the plan's stated arrearage amount "is an estimate; the creditor's allowed claim will control." JNLL did amend its proof of claim twice, each time to allege an arrearage amount exceeding the $15,000 plan estimate.

The arrearage objection could have been appropriate, and even necessary, to support JNLL's feasibility objection—but only if the arrearage understatement was of sufficient amount to make an otherwise feasible case infeasible. And JNLL did not so contend, either in its confirmation objection or in its written and oral responses to the claim objection.

### 2. Time spent calling bankruptcy expert

The Pratts' memorandum also labels as excessive "[b]illing for .5 hours to call a bankruptcy expert and review a Chapter 13 plan."[24] But they do not identify which of the specifically challenged time entries contains that language, and I find none. That service description is somewhat similar to descriptions in two of the May 30, 2019, entries by Byron Farley, the first for 0.2 hours to "Review Pratt's Chapter 13 bankruptcy amended plan documents" and the second for 0.3 hours for a "Telephone call with bankruptcy expert." But

---

[23] DI 44 at 3.
[24] DI 44 at 3.

Page 9 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

because the value of the specifically challenged time entries, $2,370, already exceeds the amount of the reduction the Pratts request, $2,295, I will not consider their challenge to an unidentified entry.

### 3. Effect of JNLL's confirmation objection on confirmed plan

In evaluating the reasonableness of JNLL's confirmation objection, which appears to be the result of almost all of the services, other than cure-right-research, in the time entries at issue, I also consider the specific confirmation objections JNLL raised and whether the objections affected the plan confirmed without JNLL's objection.

JNLL doesn't identify any way in which its confirmation objection affected the plan. The confirmation order did not change the plan's direct treatment of JNLL. It did increase the plan payment, starting with month 13, from $485 to $605. But the order did not address the remaining objections: understatement of the arrearage estimate; payment to Marion County, which JNLL had already paid; failure to require a sale or refinance; and the absence of a provision for conversion on breach. And JNLL did not pursue its argument that the plan was not filed in good faith.

Even though the payment increase might have affected feasibility, the objection didn't specify the arrearage underestimate as the factual basis for the feasibility objection, and JNLL did not offer any evidence or argument that the increase served the purpose of making the plan feasible, rather than another purpose, such as complying with other statutory requirements setting minimum total plan payments. I thus have no direct evidence that JNLL's assertion, and later conditional withdrawal, of its objection resulted in any advantage for JNLL.

Nonetheless, because I can't exclude the possibility that the objection led to the payment increase, I find that some compensation for that portion of the confirmation-objection time would

Page 10 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20

be reasonable. Also, Martinis's July 9 services calculating the arrearage were expressly for the "proof of claim," in addition to the confirmation objection, and the Pratts don't' specifically challenge proof-of-claim-preparation time.

### 4. Value of time other than for cure-right research

Based on this record, I find that the total amount of $500 is reasonable compensation for the services described in the time entries at issue. I will thus reduce the amount sought for the entries at issue, $2,370, to $500, a reduction of $1,870, which does not exceed the $2,295 reduction the Pratts requested.

## IV. Conclusion

I will sustain the claim objection in part, reducing the arrearage amount from $26,534.08 by $1,870 to $24,664.08.

### # # #

Page 11 – MEMORANDUM DECISION ON DEBTORS' OBJECTION TO CLAIM 6-3 OF etc.

Case 19-60593-dwh13    Doc 46    Filed 10/09/20